## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GWENDOLYN F. MOUSSEAU** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-1287** |
| **BOLLINGER SHIPYARDS, LLC, et al.** | **SECTION: "G" (1)** |

## ORDER

In this litigation, Plaintiff Gwendolyn F. Mousseau alleges that Defendants violated her rights under the Family Medical Leave Act ("FMLA") and the Louisiana Disability Discrimination Act ("LDDA"), and that Defendants engaged in a conspiracy to violate her civil rights under 42 U.S.C. § 1985.[1] Pending before the Court is Defendants Bollinger Shipyards, LLC ("Bollinger"), Family Medical Services, LLC ("Family Medical"), Kimberly Broussard ("Broussard"), and Dr. Darren Duet's ("Dr. Duet") (collectively "Defendants") "Rule 12(b)(6) Partial Motion to Dismiss."[2] Having considered the motion, the memoranda in support, the memorandum in opposition, and the applicable law, the Court will deny the motion as moot in part, grant the motion in part, and deny the motion without prejudice in part and grant Plaintiff leave to amend her complaint to address the deficiencies identified by the Court by April 17, 2017.

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 23.

1

# I. Background

## *A.     Factual Background*

Plaintiff alleges that she was employed by Bollinger as a tack welder from January 2010 until she was terminated in September 2015.[3]  According to Plaintiff, when she began working for Bollinger, Plaintiff had pre-existing sciatic pain, but was able to work through the occasional discomfort.[4]  She alleges that in April 2015 she was assigned to "watch a gage situated under a light and in the vicinity of a vessel which was being cleaned of its diesel fuel" during the night shift.[5]  Plaintiff alleges that she was bitten by mosquitoes and other insects during the course of her shift.[6]  Plaintiff asserts that in May 2015 she started feeling tired at work and experienced cramping and pain in her arms and legs, which led to her requesting and taking FMLA leave beginning on June 22, 2015.[7]  Plaintiff states that an MRI was conducted on May 13, 2015, which revealed a degenerative disc condition in her spine, but that by August 2015 she was no longer experiencing any numbness or weakness in her arms and legs as before.[8]  According to Plaintiff, on August 28, 2015, her doctor released her to return to work without restrictions.[9]  Plaintiff attributes her illness to a tick bite she suffered while on the night shift.[10]

---

[3] Rec. Doc. 1 at 4.

[4] *Id.*

[5] *Id.* at 5.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 6.

[10] *Id.* at 8–9; Rec. Doc. 25 at 1.

Plaintiff alleges that Broussard was employed as a nurse practitioner for Family Medical, a medical clinic located on premises owned by Bollinger.[11] According to Plaintiff, on September 2, 2015, despite the fact that Plaintiff's doctor determined that Plaintiff could return to work without restrictions, Broussard only released her to return to light duty work.[12] Plaintiff alleges that on September 2, 2015, Broussard was aware that there were no light duty jobs for tack welders available to Plaintiff, and Broussard made the decision to restrict Plaintiff to light duty, even though Plaintiff had the same condition when she was hired, because Broussard was unwilling to have Bollinger exposed to the financial risk of Plaintiff having further injury.[13] According to Plaintiff, Broussard informed her that she would have to undergo back surgery before returning to work at Bollinger, despite the fact that Plaintiff's treating neurologist determined that she could work without restriction even with her back condition.[14] Plaintiff alleges that she requested to see Dr. Duet, Family Medical's medical director, but her request was refused.[15] Plaintiff alleges that no one acting for Family Medical ever physically examined her.[16] Plaintiff cites a letter from Dr. Huddleston, which stated that Plaintiff had been tolerating work without restriction prior to the tick bite and that she had returned to her prior baseline after being treated for the tick bite and could return to work without restrictions.[17]

---

[11] Rec. Doc. 1 at 6.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 7–8.

[15] *Id.* at 7.

[16] *Id.*

[17] *Id.* at 8–9.

Plaintiff alleges that "Defendants' cooperative practice of failing and refusing to return employees who have been certified medically able to return to full duty by their treating physician is part of an overall pattern of conduct which has the common goal of eliminating or 'culling' injured employees."[18]  Plaintiff asserts that this "culling" inured to the direct and indirect financial benefit of Dr. Duet, Broussard, and Bollinger.[19]

## B.   *Procedural Background*

Plaintiff filed a complaint against Defendants on February 15, 2016.[20]  On May 26, 2016, Defendants filed the instant motion.[21]  On June 14, 2016, Plaintiff filed an opposition.[22]  With leave of Court, Defendants filed a reply on June 23, 2016.[23]

## II. Parties' Arguments

## A.   *Defendants' Arguments in Support of Dismissal*

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the following claims: (1) all claims asserted against Family Medical; (2) the claims against Broussard and Dr. Duet under the LDDA; (3) the claims for conspiracy; (4) the punitive damages claim under the FMLA against all Defendants; (5) the punitive damages claim under state law against Family Medical and Dr. Duet; and (6) the pattern or practice claims against all Defendants.[24]

---

[18]  *Id.* at 9.

[19]  *Id.*

[20]  Rec. Doc. 1.

[21]  Rec. Doc. 23.

[22]  Rec. Doc. 255.

[23]  Rec. Doc. 31.

[24]  Rec. Doc. 23-1 at 1.

First, Defendants contend that Plaintiff's FMLA claims against Family Medical must be dismissed because Family Medical was not Plaintiff's "employer."[25]  Defendants assert that under the FMLA only a single corporation should be deemed the "employer," and Plaintiff's complaint repeatedly refers to Bollinger as her employer.[26]  Defendants also assert that Plaintiff's state law discrimination claim against Family Medical should be dismissed because Family Medical did not employ Plaintiff.[27]  Defendants contend that Family Medical is not Plaintiff's employer under Louisiana law because Plaintiff did not provide services to Family Medical and Family Medical did not provide compensation to Plaintiff.[28]

Second, Defendants assert that Plaintiff's FMLA claims against Dr. Duet and Broussard must be dismissed because neither individual is Plaintiff's employer.[29]  Moreover, Defendants aver that Dr. Duet and Broussard cannot be held liable as a matter of law because Plaintiff does not allege that Dr. Duet or Broussard had any knowledge of, information about, or control over, her FMLA leave status or the FMLA leave determination made by Plaintiff's employer, Bollinger.[30]  Defendants also argue that Plaintiff's state law claims against Dr. Duet and Broussard should be dismissed because they are not Plaintiff's employer.[31]

---

[25] *Id.* at 3.

[26] *Id.* at 4.

[27] *Id.* at 5.

[28] *Id.*

[29] *Id.* at 6.

[30] *Id.* at 8.

[31] *Id.*

Third, Defendants contend that Plaintiff failed to state a conspiracy claim.[32] Defendants assert that the vague allegations that Defendants engaged in a conspiracy against Plaintiff in preventing her from returning to work do not comply with the pleading requirements for a conspiracy claim.[33] Furthermore, Defendants assert that in order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege that: "1) a racial or class-based discriminatory animus lay behind the conspiracy; and 2) the conspiracy aimed to violate rights protected against private infringement."[34] Defendants argue that Plaintiff cannot premise her federal conspiracy claim on a violation of a right protected by Louisiana state discrimination law.[35] Defendants assert that a claim for conspiracy under § 1985(3) must be asserted on a class-wide basis, and Plaintiff brings individual claims only.[36] Finally, Defendants contend that the conspiracy claim must be dismissed because only race-based claims may be asserted pursuant to § 1985(3) in the Fifth Circuit.[37]

Fourth, Defendants move to dismiss Plaintiff's claim for punitive damages as, they assert, punitive damages are not recoverable in a private right of action under the FMLA or state discrimination law.[38] Defendants contend that Louisiana has a general public policy against an award of punitive damages unless they were specifically provided for by statute and here,

---

[32] *Id.* at 9.

[33] *Id.* (citing *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999)).

[34] *Id.* at 9–10 (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)).

[35] *Id.* at 10.

[36] *Id.* (citing *Newberry v. E. Tex. State Univ.*, 161 F.3d 276 (5th Cir. 1998)).

[37] *Id.* (citing *Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001)).

[38] *Id.* at 11 (citing 29 U.S.C. § 2617(a); *Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 788 (M.D. La. 2004)).

Plaintiff's punitive damages claim for her state law cause of action is without legal support.[39]

Fifth, Defendants contend that Plaintiff cannot assert a separate claim for pattern or practice.[40] Defendants assert that a pattern or practice claim is not a separate and free-standing cause of action, but is another method by which disparate treatment can be shown.[41] Moreover, Defendants argue that a pattern or practice method of proof is not available in suits which are private, non-class action lawsuits.[42]

**B.      *Plaintiff's Arguments in Opposition to Dismissal***

In opposition, Plaintiff contends that she "has made valid FMLA, Pattern and Practice, and § 1985 claims against all Defendants."[43] Plaintiff asserts that she has made valid LDDA claims against Bollinger, but that she is not asserting LDDA claims against Family Medical, Dr. Duet, or Broussard.[44]

Plaintiff contends that the FMLA has a broad definition of employer that covers all the identified Defendants, as it includes "any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer."[45] Plaintiff contends that individuals such as corporate officers "acting in the interest of an employer" are individually liable for any

---

[39] *Id.*

[40] *Id.*

[41] *Id.* (citing *Admire v. Strain*, 566 F. Supp. 2d 492, 504 (E.D. La. 2008); *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 355 (5th Cir. 2001)).

[42] *Id.* (citing *Admire*, 566 F. Supp. 2d at 504; *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)).

[43] Rec. Doc. 25 at 1.

[44] *Id.* at 1, 3.

[45] *Id.* at 4 (citing 29 C.F.R. 825.104(a)).

violations of the requirements of the FMLA.[46]  Plaintiff asserts that Defendants do not dispute that Bollinger is a properly named defendant as Bollinger employed Plaintiff.[47]  Plaintiff contends that Family Medical and Dr. Duet acted directly or indirectly in the interest of Bollinger and under the theory that they operated as a single employer.[48]  Plaintiff also asserts that Broussard made the decision to restrict Plaintiff to light duty because Broussard was unwilling to have Bollinger exposed to the financial risk of Plaintiff having further injury.[49]  Accordingly, Plaintiff asserts that Family Medical, Dr. Duet, and Broussard acted, directly or indirectly, in the interest of Bollinger, and consequently are both employers under the FMLA.[50]

Plaintiff also asserts that Family Medical is an employer under the FMLA under the single-employer theory.[51]  Plaintiff contends that such a determination is to be evaluated by the relationship viewed in its totality, including: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control.[52]  Plaintiff argues that Bollinger and Family Medical all function as a single entity, owned, managed, and controlled by the same individuals.[53]

Next, Plaintiff contends that although Defendants assert that punitive damages are not

---

[46] *Id.* (citing 29 C.F.R. 825.104(d)).

[47] *Id.*

[48] *Id.* at 4–5.

[49] *Id.* at 5–6.

[50] *Id.* at 5–6, 7–9.

[51] *Id.* at 6–7.

[52] *Id.* at 6–7 (citing 29 C.F.R. 825.104(c)(2)).

[53] *Id.* at 7.

recoverable under the FMLA, pursuant to 29 U.S.C. § 2617, Plaintiff can recover liquidated damages.[54] Turning to Plaintiff's LDDA claims, Plaintiff contends that she is only bringing these claims against Bollinger, not Family Medical or Dr. Duet.[55]

Plaintiff asserts that pursuant to 42 U.S.C. § 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons; (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all; (4) and which results in injury to the plaintiff; as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.[56] In response to Defendants' argument that § 1985 claims are limited to race discrimination claims, Plaintiff asserts that the Supreme Court in *Bray v. Alexandria Women's Health Clinic* stated only that discrimination had to be class-based and here, the protected class of individuals is disabled persons.[57] Plaintiff contends that Bollinger, Family Medical, Dr. Duet, and Broussard conspired to deprive Plaintiff of her rights under the ADA and FMLA.[58]

Finally, Plaintiff asserts that she is not bringing a separate claim for pattern or practice, but rather that her pattern or practice allegations are "part of the larger story which will illustrate Defendants' attempts to intentionally circumvent Plaintiff's federally protected rights."[59] Plaintiff contends that Family Medical and its employees, including Dr. Duet, operated under the direction

---

[54] *Id.* at 9–10.

[55] *Id.* at 10.

[56] *Id.* (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

[57] *Id.* at 10–11 (citing 506 U.S. 263 (1993)).

[58] *Id.* at 11.

[59] *Id.*

of and in the best interest of Bollinger, and Bollinger "appears to have determined that it is going to send a message to its employees that taking FMLA leave and requiring ADA modifications will be met with termination."[60] Therefore, Plaintiff asserts that her pattern or practice allegations are critical to the story and relevant to the damages that are available to Plaintiff.[61]

## C.   *Defendants' Arguments in Further Support of Dismissal*

Defendants contend that Plaintiff's LDDA claims should be dismissed against Family Medical, Broussard, and Dr. Duet.[62] They note that Plaintiff stipulates she is only bringing her LDDA claims against Bollinger.[63] Defendants also assert that Plaintiff's FMLA claims are not viable against Family Medical, Broussard, or Dr. Duet.[64] Defendants argue that Plaintiff has not alleged that Broussard, Dr. Duet, or Family Medical were corporate officers of Bollinger, or that they had any input or control into the decisions made by Bollinger with respect to Plaintiff's leave and alleged termination.[65] Further, Defendants note that Plaintiff cited no law in support of her assertion that an unrelated third party, who is not a corporate officer of Bollinger nor even employed by Bollinger, can be liable as an individual under the FMLA.[66]

Defendants assert that Plaintiff's position on her punitive damages claims under the FMLA

---

[60] *Id.* at 12.

[61] *Id.* Finally, Plaintiff makes arguments regarding the dismissal of a privacy claim. *Id.* No such claim was brought in this case. *See* Rec. Doc. 1. Moreover, Defendants have not moved to dismiss any such claim. *See* Rec. Doc. 23. Accordingly, the Court does not address these arguments.

[62] Rec. Doc. 31 at 2.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 3.

[66] *Id.*

and state law are unclear; however, punitive damages are not recoverable under either statute.[67]

Turning to Plaintiff's conspiracy claim pursuant to § 1985, Defendants contend that the complaint includes only conclusory allegations regarding conspiracy and fails to allege with specificity how each defendant played a role in the conspiracy, and therefore the claim fails on its face.[68] Defendants contend that although Plaintiff recognizes that "class-based" discriminatory animus is required pursuant to § 1985, Plaintiff does not recognize that the necessary motivation for a conspiracy claim under § 1985 is missing from Plaintiff's complaint.[69] In addition, Defendants argue that Plaintiff has conceded that she is not pursuing LDDA claims against anyone other than Bollinger, and Plaintiff offers no explanation for how another defendant "could be liable for being motivated by discriminatory animus and conspiring to interfere with her disability rights when they cannot as a matter of law be liable for actually violating her disability rights."[70] Finally, Defendants reiterate their assertion that within the Fifth Circuit, § 1985 claims must be based upon race.[71]

Finally, Defendant notes that Plaintiff cites no law to rebut Defendants' arguments that pattern or practice allegations cannot serve as a separate claim, and further the pattern or practice method of proof is not available in suits which are private, non-class action lawsuits.[72] Therefore,

---

[67] *Id.* at 3–4 (citing *Mays v. Bd. of Comm'rs Port of New Orleans*, No. 14-1014, 2015 WL 1245683, at *11 (Mar. 18, 2015) (Brown, J.)).

[68] *Id.* at 4.

[69] *Id.* at 5.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 7.

11

Defendant asserts that Plaintiff's pattern or practice allegations should be dismissed.[73]

### III. Law and Analysis

**A.**     ***Legal Standard on a Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[74] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[75] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[76] "Factual allegations must be enough to raise a right to relief above the speculative level."[77] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[78]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[79] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[80] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[81]

---

[73] *Id.*

[74] Fed. R. Civ. P. 12(b)(6).

[75] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[77] *Twombly*, 550 U.S. at 556.

[78] *Id.* at 570.

[79] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[80] *Iqbal*, 556 U.S. at 677–78.

[81] *Id.* at 679.

Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[82] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[83] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[84] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[85] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[86]

### B.    *Analysis*

In Plaintiff's opposition to the motion to dismiss, Plaintiff asserts that "to the extent the Complaint indicates the [LDDA] claims are against entities other than [Bollinger], Plaintiff stipulates that she is not pursuing those claims against entities other than [Bollinger]."[87] Therefore, the Court denies Defendants' motion to dismiss the LDDA claims against Defendants Family Medical, Broussard, and Dr. Duet as moot. Defendants also move to dismiss: (1) Plaintiff's FMLA claims against Family Medical, Broussard, and Dr. Duet; (2) Plaintiff's 42 U.S.C. § 1985 claim

---

[82] *Id.* at 678.

[83] *Id.*

[84] *Id.*

[85] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[86] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[87] Rec. Doc. 25 at 1.

against all Defendants; (3) Plaintiff's claims for punitive damages under the FMLA and state law; and (4) Plaintiff's pattern or practice claims against all Defendants.[88]  The Court will address each of these claims in turn.

### 1.      FMLA Claims Against Family Medical, Dr. Duet, and Broussard

Defendants move to dismiss the FMLA claims against Family Medical, Dr. Duet, and Broussard on the grounds that they were not Plaintiff's "employer" pursuant to the FMLA.[89] Defendants argue that Plaintiff repeatedly refers to Bollinger as her employer in her complaint, and that, under the FMLA, only a single corporation should be deemed the "employer" for FMLA purposes.[90] Plaintiff contends that Family Medical, Broussard, and Dr. Duet are "employers" because the FMLA expansively defines "employer" to include persons who act directly or indirectly in the interest of a covered employer to any of the employer's employees.[91] Plaintiff avers that because each of the Defendants acted, directly or indirectly, in the interest of Bollinger to Plaintiff, they are "employers" under the FMLA and thus her FMLA claim should not be dismissed.[92] Plaintiff also argues that Family Medical is her employer under the theory that Bollinger and Family Medical operated as a single-employer.[93]

Under the FMLA, a covered employer must "allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from 'a serious health condition that makes the

---

[88] Rec. Doc. 23.

[89] Rec. Doc. 23-1 at 3–4, 6–8.

[90] *Id.* at 4.

[91] Rec. Doc. 25 at 5–6, 7–9.

[92] *Id.* at 5.

[93] Rec. Doc. 25 at 4–5.

employee unable to perform the functions of the position of such employee.'"[94]  When an eligible employee returns from FMLA leave, the employer must restore the employee to the same position he or she previously held or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[95]  To protect an employee's right to take leave, the FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" provided by the Act.[96]

Pursuant to the Code of Federal Regulations regarding the Family and Medical Leave Act, an employer is defined as follows:

> [A]ny person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency.[97]

The Fifth Circuit has frequently noted that the definition of "employer" under the FMLA is "very similar" to the definition of "employer" under the Fair Labor Standards Act ("FLSA").[98]  Thus, the Fifth Circuit has determined that "[t]he fact that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in

---

[94] *Caldwell v. KHOU-TV*, No. 16-20408, 2017 WL 892439, at *5 (5th Cir. Mar. 6, 2017) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016)).

[95] *Hunt*, 277 F.3d at 763 (citing 29 U.S.C. § 2614(a)(1)); *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

[96] *Caldwell V*, 2017 WL 892439, at *5 (citing 29 U.S.C. § 2615(a)(1)).

[97] 29 C.F.R. § 825.104(a); *see* 29. U.S.C. § 2611(4)(A)(ii)(l).

[98] *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (citing 29 U.S.C. § 203(d)).

15

the FMLA."[99]  Accordingly, pursuant to the Fifth Circuit's instructions, this Court will look to FLSA's definition of "employer" as guidance to determine whether Family Medical, Dr. Duet, and Broussard are "employers" under the FMLA.

Similarly to the FMLA, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[100]  The Fifth Circuit has held that FLSA's definition of employer is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees."[101]  Moreover, to determine if an individual is an employer under the FLSA, the Fifth Circuit has stated that courts should consider "whether the alleged employer (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[102]

In Plaintiff's complaint, Plaintiff alleges that Bollinger employed her and that Family Medical "provides company doctor services to [Bollinger], including but not limited to, evaluating employees who are on FMLA leave."[103]  Plaintiff argues that Broussard, "as an agent of [Family Medical]," made the decision to restrict Plaintiff to "light duty" to protect Bollinger from the

---

[99] *Modica*, 465 F.3d at 186 (quoting *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999)).

[100] *Id.*; *see* 29 U.S.C. § 203(d).

[101] *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (quoting *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 196 (5th Cir. 1983)); *see also Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984).

[102] *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (internal citations omitted).

[103] Rec. Doc. 1 at 2.

financial risk of Plaintiff being further injured in her former position of tack welder.[104] Plaintiff avers that Family Medical continued to deny Plaintiff her right to return to work based on financial concerns for Bollinger rather than medical reasons related to Plaintiff's health.[105] Plaintiff further alleges that Dr. Duet was the director of Family Medical and had the authority to direct the work of Broussard, but that he refused Plaintiff's request to meet.[106] Thus, according to Plaintiff, because Family Medical, Dr. Duet, and Broussard were acting in the interest of a covered employer, *i.e.* Bollinger, they are also covered employers under the FMLA.[107]

The Court finds Plaintiff's arguments that Family Medical, Dr. Duet, and Broussard are her "employers" unpersuasive. As stated *supra*, the Fifth Circuit, in interpreting FLSA's substantially similar definition of "employer," has determined that a person can be an "employer" when he or she "effectively dominates [the employer corporation's] administration" or "has the power to act[] on behalf of the corporation vis-à-vis its employees."[108] Here, Plaintiff has failed to plausibly allege that Family Medical, Dr. Duet, or Broussard "effectively dominates" Bollinger's administration or otherwise has "the power to act" on behalf of Bollinger to its employees.[109]

Additionally, as stated *supra*, the Fifth Circuit has instructed that courts should consider whether the allege employers have "the power to hire and fire the employees," supervise or control

---

[104] Rec. Doc. 1 at 6; Rec. Doc. 25 at 5.

[105] Rec. Doc. 25 at 6.

[106] Rec. Doc. 1 at 3, 7; Rec. Doc. 25 at 6, 8.

[107] Rec. Doc. 25 at 6–8.

[108] *Reich*, 998 F.2d at 329.

[109] *Id.*

the employee's "work schedules or conditions of employment," determine the "rate and method of payment," and maintain employment records.[110]  Likewise, the Supreme Court has interpreted FLSA's "employer" definition to include persons with "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work."[111]  However, Plaintiff's complaint fails to allege that any of these factors are met, as Plaintiff's only allegation is that Family Medical, Broussard, and/or Dr. Duet made a determination that Plaintiff was medically fit to return to "light duty."[112]  However, it is unclear if Plaintiff even alleges that Family Medical, Broussard, or Dr. Duet, rather than Bollinger, had the authority to make the ultimate decision to deny Plaintiff's right under the FMLA to return to her previously held position. Moreover, Plaintiff has not alleged that Family Medical, Broussard, or Dr. Duet had sufficient managerial responsibilities or control over Plaintiff's employment at Bollinger, rate of pay, or employment records such that they could be considered "employers" under the FMLA.

Plaintiff also asserts that Family Medical is liable pursuant to the FMLA under the "integrated employer" test.[113]  According to the Code of Federal Regulations regarding the FMLA, "[n]ormally the legal entity which employs the employee is the employer under FMLA."[114] However, separate entities may be considered parts of a single employer pursuant to the FMLA if they meet the "integrated employer" test.[115]  "A determination of whether or not separate entities

---

[110] *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (internal citations omitted)

[111] *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984).

[112] Rec. Doc. 1 at 6.

[113] Rec. Doc. 25 at 6–7 (citing 29 C.F.R. § 825.104(c)(2)).

[114] 29 C.F.R. § 825.104(c).

[115] 29 C.F.R. § 825.104(c)(2).

are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality."[116] The regulation states that factors to be considered in conducting this analysis are: "(i) Common management; (ii) Interrelation between operations; (iii) Centralized control of labor relations; and (iv) Degree of common ownership/financial control."[117]

Plaintiff asserts that she has alleged that "Bollinger and [Family Medical] function as a single entity, and they are owned, managed and controlled by many of the same individuals."[118] Plaintiff also alleged that Family Medical "is a closely held company owned and managed by Dino Chouest, Damon Chouest, and Dionne Chouest Austin," who Plaintiff asserts also control Bollinger.[119] However, beyond the broad conclusion that these entities were controlled by the same individuals, Plaintiff makes no other allegation regarding the degree of common ownership/financial control or the centralized control of labor relations. Plaintiff also alleges that Family Medical provides "company doctor services" to Bollinger, including evaluating employees who are on FMLA leave, but offers little else in support of the interrelation between the companies.[120] Without further information, the Court cannot determine whether Bollinger and Family Medical constitute an integrated employer for FMLA purposes. Therefore, the Court concludes that Plaintiff has failed to allege sufficient facts to state a FMLA claim against Family

---

[116] *Id.*

[117] *Id.*

[118] Rec. Doc. 25 at 7 (citing Rec. Doc. 1 at 2).

[119] *Id.* (citing Rec. Doc. 1 at 2).

[120] Rec. Doc. 1 at 2.

Medical, Broussard, or Dr. Duet.

### 2.      Conspiracy Claims Pursuant to 42 U.S.C. § 1985

Defendants also move to dismiss Plaintiff's conspiracy claims against all Defendants on the grounds that: 1) the claims lack the particularity and specificity required of conspiracy claims; 2) Plaintiff failed to meet the general standard of alleging race or class-based discrimination; and 3) Plaintiff failed to meet the Fifth Circuit standard requiring a race-based conspiracy.[121]  In her complaint, Plaintiff alleges that "[a]ll defendants engaged in a conspiracy against Mousseau to deprive her of her federally protected rights."[122]

Pursuant to 42 U.S.C. § 1985(3), "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," the injured party may recover damages. To assert a Section 1985(d) conspiracy claim, a plaintiff must allege: (1) "a conspiracy of two or more persons;" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"; and (3) "an act in furtherance of the conspiracy;" (4) "whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[123]

Additionally, the Fifth Circuit has determined that "it is well-established in this circuit that

---

[121]  Rec. Doc. 23-1 at 9–10.

[122]  Rec. Doc. 1 at 11.

[123]  *Deubert v. Gulf Federal Savings Bank*, 820 F.2d 754, 757 (5th Cir. 1987) (citations omitted).

the only conspiracies actionable under section 1985(3) are those motivated by racial animus."[124] While the text of 42 U.S.C. § 1985 does not explicitly limit its reach to race-based conspiracy claims, the Supreme Court has recognized that the statute was passed with the "predominate purpose" of combating widespread animus against African Americans by the Ku Klux Klan and its allies, and it was not intended to apply to "all tortious, conspiratorial interferences with the rights of others."[125]

Nonetheless, this Court notes that there is some conflicting guidance in the Fifth Circuit's decisions regarding the scope of 42 U.S.C. § 1985 as to whether conspiracies based on other types of class-based animus are actionable under Section 1985(3). For example, in *Westberry v. Gilman Paper Company*, the Fifth Circuit recognized that Section 1985's language regarding the deprivation of equal protection "means there must be some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action."[126] Likewise, a decade later, the Fifth Circuit noted in *Galloway v. State of Louisiana* that, while "not all classes or categories of individuals that can be imagined merit section 1985(3) protection," a plaintiff may be able to assert a claim under 42 U.S.C. § 1985 if he or she can "show membership in some group with inherited or immutable characteristics (*e.g.*, race, gender, religion, or national origin), or that the discrimination resulted from the plaintiff's political beliefs or associations."[127]

---

[124] *Id.*

[125] *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835–37 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971).

[126] 507 F.2d 206, 208 (5th Cir. 1975) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

[127] 817 F.2d 1154, 1159 (5th Cir. 1987). *See also Sullivan v. Cty. of Hunt, Tex.*, 106 F. App'x 215, 220 (5th Cir. 2004) (holding that a plaintiff asserting a conspiracy claim under Section 1985(3) "must prove a discriminatory animus based on race or some other inherited or immutable class characteristic such as gender, religion or national origin or based upon political association or beliefs").

However, only two months after *Galloway* was decided, the Fifth Circuit unequivocally held in *Deubert v. Gulf Federal Savings Bank* that "it is *well-established* in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus."[128] Similarly, in *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, the Fifth Circuit rejected the plaintiff's argument that a Section 1985 claim can be based on animus towards religious beliefs or First Amendment rights and declined "to extend the reach of section 1985(3) to include conspiracies motivated by religious, *as opposed, to racial animus*."[129] In *Newberry v. East Texas State University*, the Fifth Circuit conceded that the Supreme Court's opinion that a § 1985(3) action can be based on "some racial or perhaps otherwise class-based, invidiously discriminatory animus" had "clouded" the Fifth Circuit's interpretation of the statute.[130] However, the Fifth Circuit further noted that it "has never held that nonracial animus is sufficient," and that "*Deubert* remains the law in this circuit."[131] Thus, while some other circuits have held that conspiracy claims under 42 U.S.C. § 1985(3) may be based on other types of animus,[132] the Supreme Court and the Fifth Circuit have both declined on several occasions to widen the scope

[128] 820 F.2d 754, 757 (5th Cir. 1987) (emphasis added) (citing *Daigle v. Gulf States Utilities Co., Local 2286*, 794 F.2d 974, 978–79 (5th Cir. 1986); *Eitel v. Holland*, 787 F.2d 995, 1000 (5th Cir. 1986); *Rayborn v. Mississippi State Board of Dental Examiners*, 776 F.2d 530, 532 (5th Cir. 1985)). *See also Smith v. Myers*, No. 3:15-CV-356, 2016 WL 5794502, at *1 n.1 (S.D. Miss. Sept. 30, 2016) (discussing the "conflict within Fifth Circuit precedent" regarding the scope of 42 U.S.C. § 1985).

[129] 90 F.3d 118, 124 (5th Cir. 1996) (emphasis added).

[130] 161 F.3d 276 (5th Cir. 1998).

[131] 161 F.3d 276, 281 n.2 (5th Cir. 1998). *See also Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (confirming that a Section 1985 conspiracy claim "must also have a racially based animus").

[132] *See, e.g.*, *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1024 (7th Cir. 2000) (noting that the Seventh Circuit interprets Section 1985(3) to include "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty"); *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997), *as amended* (May 15, 1997) (determining that Section 1985(3) protects "the handicapped as a class"). *But see Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) ("[W]e repeatedly have declined to extend that section to apply in non-racial contexts.").

of Section 1985 beyond racial animus.[133]

Here, Plaintiff has made no allegations that racial animus motivated Defendants' conduct. Moreover, even assuming that the Fifth Circuit has left the door open for recognizing Section 1985(3) conspiracy claims based on certain class-based animus, Plaintiff has likewise failed to allege that she was a member of "some group with inherited or immutable characteristics" or was discriminated against because of her "political beliefs or associations" to which such a claim could potentially be asserted under Fifth Circuit precedent.[134] Accordingly, while the Supreme Court has noted that "it is a close question" whether Section 1985(3) extends beyond race-based animus,[135] Plaintiff has failed to point to any authority, nor has the Court found any, that supports Plaintiff's argument that she has plausibly alleged a claim under 42 U.S.C. § 1985(3). Accordingly, the Court finds that Plaintiff has failed to state a claim of conspiracy pursuant to 42 U.S.C. § 1985.

### 3.    Punitive Damages

Defendants also move to dismiss Plaintiff's request for punitive damages under the FMLA and state law on the grounds that these claims do not provide for punitive damages.[136] In

---

[133] *See, e.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) (determining that a conspiracy based on animus against women seeking abortions is not sufficient to state a claim under Section 1985(3)); *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825 (1983) (holding that commercial and economic animus against non-union members could not form the basis for a Section 1985(3) claim); *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) (declining to extend Section 1985(3) to include religion-based animus); *Galloway v. State of La.*, 817 F.2d 1154, 1159 (5th Cir. 1987) (finding that a plaintiff's allegation that he was not a member of the "in-clique" was not actionable under Section 1985(3)); *Eitel v. Holland*, 787 F.2d 995, 1000 (5th Cir.), *on reh'g*, 798 F.2d 815 (5th Cir. 1986) (determining that "pro se plaintiffs do not constitute a class for whose members § 1985(3) provides a remedy"); *Rayborn v. Mississippi State Bd. of Dental Examiners*, 776 F.2d 530, 532 (5th Cir. 1985) (holding that Section 1985(3) "does not reach economic or commercially-motivated conspiracies" and that the conspiracy "must be race-based to state a cause of action for violation of § 1985").

[134] *Galloway*, 817 F.2d at 1159; *Sullivan v. Cty. of Hunt, Tex.*, 106 F. App'x 215, 220 (5th Cir. 2004).

[135] *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835–37 (1983).

[136] Rec. Doc. 23-1 at 11.

opposition, Plaintiff asserts that she seeks "all appropriate relief identified in 29 U.S.C. § 2617, including liquidated damages" pursuant to her FMLA claim.[137]

Pursuant to 29 U.S.C. § 2617, an employer who violates the FMLA is liable to any eligible employee affected for damages, including: (1) "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" or actual monetary losses; (2) interest on any such amount; and (3) liquidated damages equal to the sum of the compensation denied or lost or actual monetary losses.[138] Pursuant to Louisiana Revised Statute § 23:303, "[a] plaintiff who has a cause of action against an employer, employment agency, or labor organization for a violation of this Chapter [Louisiana Revised Statute § 23:301 *et seq.*] may file a civil suit in a district court seeking compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, reasonable attorney fees, and court costs." Neither of these statutes provide for punitive damages; therefore, the Court grants Defendants' motion to dismiss any request for punitive damages, if Plaintiff is in fact pursuing such damages, pursuant to the FMLA and Louisiana state law.

### 4.    Pattern or Practice

Defendants contend that Plaintiff cannot assert a separate claim for pattern or practice.[139] Defendants assert that a pattern or practice claim is not a separate and free-standing cause of action, but is another method by which disparate treatment can be shown.[140] Moreover, Defendants argue

---

[137] Rec. Doc. 25 at 10.

[138] 29 U.S.C. § 2617(a)(1)(A).

[139] Rec. Doc. 23-1 at 11.

[140] *Id.*

that a pattern or practice method of proof is not available in suits that are private, non-class action lawsuits.[141]  In opposition, Plaintiff asserts that she is not bringing a separate claim for pattern or practice, but rather that her pattern or practice allegations are "part of the larger story which will illustrate Defendants' attempts to intentionally circumvent Plaintiff's federally protected rights."[142]  Plaintiff contends that Family Medical and its employees, including Dr. Duet, operated under the direction of and in the best interest of Bollinger, and Bollinger "appears to have determined that it is going to send a message to its employees that taking FMLA leave and requiring ADA modifications will be met with termination."[143]

The Fifth Circuit has held that a pattern or practice claim "is not a separate cause of action, but simply one method of proving [] discrimination."[144]  Moreover, a "pattern-or-practice method of proving discrimination is unavailable in a private, non-class action, such that [the plaintiff's] failure to bring this case as a class action or seek certification would also defeat [her] claim."[145]  Plaintiff stipulates that she is not bringing a separate pattern or practice claim. Moreover, a pattern or practice method of proving discrimination is unavailable here because this is a private, non-class action suit. Accordingly, because Plaintiff stipulates that she is not bringing a separate pattern or practice claim, the Court denies Defendants' motion as moot as to Plaintiff's pattern or practice claim.

---

[141] *Id.*

[142] Rec. Doc. 25 at 11.

[143] *Id.* at 12.

[144] *Rogers v. Pearland Ind. School Dist.*, 827 F.3d 403, 407–08 (5th Cir. 2016) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001)).

[145] *Id.* at 408 (citing *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)).

### 5.    Request for Leave to Amend

In the last sentence of her opposition, Plaintiff requests leave to amend her complaint rather than granting the motion to dismiss.[146]  Dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[147]  Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend her complaint.[148]  "In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[149]

Here, although Plaintiff specifically requested leave to amend her complaint, she failed to explain how amendment could cure the deficiencies raised by Defendants. Nevertheless, the Court, in its discretion, will grant Plaintiff leave to amend her claims against Family Medical, Broussard, and Dr. Duet under the FMLA, as well as Plaintiff's 42 U.S.C. § 1985 claims by April 17, 2017, to address the issues identified by the Court. If Plaintiff is unable to do so by the Court's deadline, upon motion of a party the Court will dismiss these claims. However, the Court will not allow Plaintiff to amend her complaint regarding any claims against Defendants Family Medical,

---

[146] Rec. Doc. 25 at 13.

[147] *Beanal v. Freeport-McMoran, Inc,* 197 F.3d 161, 164 (5th Cir. 1999).

[148] See *Carroll v. Fort James Corp*., 470 F.3d 1171, 1175 (5th Cir. 2006) ("This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment.'") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[149] *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

Broussard, and Dr. Duet pursuant to the LDDA or her pattern or practice claims as Plaintiff has already stated that she is not bringing any such claims. Furthermore, the Court will not allow any amendment regarding a request for punitive damages pursuant to the FMLA as amendment would be futile.

### IV. Conclusion

For the foregoing reasons, the Court denies as moot the motion to dismiss with regards to Plaintiff's LDDA claims against Defendants Family Medical, Broussard, and Dr. Duet and Plaintiff's pattern and practice claims. The Court concludes that Plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1985 against all Defendants and has failed to state a claim pursuant to the FMLA against Family Medical, Broussard, and Dr. Duet. However, the Court will allow Plaintiff until April 17, 2017, to amend her complaint to cure the deficiencies noted, if possible. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Rule 12(b)(6) Partial Motion to Dismiss"[150] is **DENIED AS MOOT IN PART** and **DENIED WITHOUT PREJUDICE IN PART** and **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the motion is granted as to Plaintiff's request for punitive damages, if Plaintiff is in fact pursuing such damages, pursuant to the FMLA and Louisiana state law.

**IT IS FURTHER ORDERED** that the motion is denied as moot as to Plaintiff's claims against Defendants Family Medical, Broussard, and Dr. Duet pursuant to the LDDA and Plaintiff's pattern or practice claims.

---

[150] Rec. Doc. 23.

**IT IS FURTHER ORDERED** that the motion is denied without prejudice as to Plaintiff's claims against Family Medical, Broussard, and Duet pursuant to the FMLA and Plaintiff's claims pursuant to 42 U.S.C. § 1985.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend her complaint by April 17, 2017, to address the issues identified by the Court. If Plaintiff is unable to cure the deficiencies in the complaint by that time, upon motion by a party, the Court will dismiss the following claims: (1) Plaintiff's claims pursuant to 42 U.S.C. § 1985; and (2) Plaintiff's claims pursuant to the FMLA against Family Medical, Broussard, and Dr. Duet.

**NEW ORLEANS, LOUISIANA,** this 22nd day of March, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

28